IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-14-0295-TUC-CKJ (BGM) |
| Plaintiff, | |
| | **REPORT & RECOMMENDATION** |
| vs. | |
| Francisco Jesus Sosa,<br>Luis Carlos Saiz | |
| Defendants. | |

Currently pending before the Court is Defendant Francisco Jesus Sosa's Amended Motion to Suppress Evidence and Request for Evidentiary Hearing (Doc. 30) and Defendant Luis Carlos Saiz's Motion for Joinder Re: Motion to Suppress Evidence and Request for Evidentiary Hearing (Doc. 32). Defendants are charged with one count of knowingly and intentionally combining, conspiring, confederating and agreeing together with persons known unknown to the grand jury, to possess with intent to distribute 50 kilograms or more of marijuana, a Schedule 1 controlled substance; in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D) and with one count of knowingly and intentionally possessing with intent to distribute 50 kilograms or more of marijuana, a Schedule 1 controlled substance; in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D). Indictment (Doc. 8). Defendants seek suppression of evidence obtained as a result of a stop allegedly in violation of the Fourth Amendment. The Government argues that it lawfully stopped Defendant's vehicle based upon reasonable suspicion for an investigatory traffic stop.

Pursuant to LRCrim. 5.1, this matter came before Magistrate Judge Macdonald for an evidentiary hearing a report and recommendation. On May 19, 2014, oral argument was

1  heard by Magistrate Judge Macdonald and the matter taken under advisement.  Minute Entry

2  5/19/2014 (Doc. 41).  The Magistrate Judge recommends that the District Court, after its

3  independent review, deny Defendant's motion.

4

5  **I.      FACTUAL BACKGROUND**

6          On January 19, 2014, at approximately 12:27 a.m., United States Border Patrol Agents

7  Edward Seed and Juan Delgado were working traffic patrol duties along Arizona State Route

8  186, south of Dos Cabezas, Arizona.  Hr'g Tr. 5/19/2014 (Doc. 45) 12:19-13:8; 48:3-7.

9  Agent Seed has been a Border Patrol Agent for six (6) years and four (4) months.  *Id.* at 7:22-

10 8:3; 46:9-10; 52:19-20.  Agent Delgado has worked for the border patrol for ten (10) years

11 and two (2) months.  *Id.* at 88:10-15.  Both agents have served at the Willcox Border Patrol

12 Station for their entire career.  *Id.* at 7:22-8:9; 88:16-23.

13         The Willcox Border Patrol Station is responsible for the areas of I-10, south towards

14 Douglas and Naco, Arizona, areas to the east, such as those near the Chiricahua National

15 Monument and all the way to the New Mexico border.  *Id.* at 8:10-23; 88:24-89:11.  Agent

16 Seed testified that having patrolled this area continuously for six (6) years, he is "very

17 familiar" with it.  Hr'g Tr. 5/19/2014 (Doc. 45) at 9:1-5.  Agent Seed and Agent Delgado

18 testified that the area along Highway 186 is very sparsely populated with the Chiricahua

19 National Monument at one end.  *Id.* at 9:11-15; 89:20-90:5.  Agent Seed further testified that

20 the Monument is the only tourist attraction in the area, the population is otherwise comprised

21 of local ranchers.  *Id.*  Agent Seed testified that he recognizes most of the ranchers that live

22 in the area, as well as their vehicles.  *Id.* at 9:16-10:1; 14:8-13.  Agent Delgado also testified

23 that he recognizes most of the ranchers and their vehicles.  *Id.* at 90:22-91:19.  Agent Seed

24 and Agent Delgado also testified that vehicle traffic on Highway 186 generally occurs during

25 daylight hours.  Hr'g Tr. 5/19/2014 (Doc. 45) at 10:2-11; 91:20-92:6.  Agent Seed further

26 testified that there are perhaps thirty (30) to fifty (50) households along Highway 186

27 between the Chiricahua National Monument and Willcox, with perhaps fifteen (15) in the

28 area that he and Agent Delgado were patrolling on the night in question.  *Id.* at 13:23-14:3.

1   Agent Delgado testified that there were approximately five (5) ranch families in the
2   immediate area. *Id.* at 90:25-91:6.

3   Highway 186 intersects with Interstate 10 in the town of Willcox. *Id.* at 10:12-16.
4   Agent Seed testified that there is not a Border Patrol checkpoint on Highway 186. *Id.* at
5   10:17-21. Furthermore, roughly parallel to Highway 186 is Highway 191. *Id.* at 10:22-24.
6   Agent Seed testified that he is familiar with Highway 191, and described it as more populated
7   and better maintained than Highway 186. Hr'g Tr. 5/19/2014 (Doc. 45) at 10:25-11:11.
8   Agent Seed and Agent Delgado testified that coming from Douglas, Arizona, Highway 191
9   was a faster route to get to Interstate 10. *Id.* at 11:10-12:8; 22:12-14; 94:6-95:7. The agents
10  testified that this was true for individuals who live in the Sunizona area as well. *Id.* at 43:6-
11  44:12; 95:8-24. Agent Seed and Agent Delgado testified that there is a checkpoint at Mile
12  Marker 30 on Highway 191. *Id.* at 12:9-13; 22:15-23; 111:15-18; 143:10-13. The Highway
13  191 checkpoint was previously located at Mile Marker 40, almost to Mile Marker 43, just
14  south of Kansas Settlement. *Id.* at 22:24-23:7; 143:14-16. Agent Seed and Agent Delgado
15  also testified that if an individual wanted to avoid the checkpoint, they could still get to
16  Interstate 10 via Highway 186. Hr'g Tr. 5/19/2014 (Doc. 45) at 78:13-15; 95:25-96:18;
17  142:4-18. Agent Delgado further testified that the Highway 191 checkpoint had recently
18  moved, and it resulted in an increase in criminal activity. *Id.* at 97:2-21; 98:9-19.

19  Agent Seed and Agent Delgado testified that on the evening in question, they were
20  working the 6 p.m. to 2 a.m. shift. *Id.* at 12:19-25; 96:19-23; 130:7-17. At approximately
21  midnight, Agent Seed was riding along with Border Patrol Agent Delgado. *Id.* at 13:1-3;
22  48:8-12. Agent Seed further testified that their duties that evening were to patrol the
23  Highway 181/186 area, including the monument, watching not only vehicle traffic, but also
24  foot traffic looking for illegal aliens hiking from Mexico northward. *Id.* at 13:4-8. Agent
25  Seed testified that the houses in this area are set anywhere between four (4) and six (6) miles
26  apart. Hr'g Tr. 5/19/2014 (Doc. 45) at 14:4-7.

27  On the evening in question, Agent Seed and Agent Delgado testified that they
28  encountered a vehicle, shortly after midnight on January 19, 2014, traveling northbound on

Highway 186. *Id.* at 14:14-19; 17:13-15; 98:20-99:5.  Agent Seed further testified that when he first saw the headlights, the vehicle was approximately ten (10) to twelve (12) miles away from the agents. *Id.* at 16:8-14; 48:18-49:2; 49:18-50:1.  Agent Delgado testified that he first spotted the vehicle while he and Agent Seed were at approximately Mile Marker 348, in the area of Dos Cabezas.  *Id.* at 99:6-21.   Agent Delgado testified that the vehicle was approximately four (4) miles away when they first saw its headlights. *Id.* at 128:2-12.  Agent Seed further testified that his initial thought was that it was odd to see any vehicles out on the road at that time of night.  Hr'g Tr. 5/19/2014 (Doc. 45) at 14:20-23.  Agent Delgado also found it odd to see a vehicle on the highway at such a late hour. *Id.* at 100:8-16. Agent Seed and Agent Delgado both testified that they had gone through numerous eight (8) hour shifts without seeing any vehicles. *Id.* at 15:3-14; 101:16-102:3.  Agent Seed testified that the first two possibilities that he came to regarding the vehicle were that it was either a rancher or camper. *Id.* at 14:20-15:25.  Agent Seed testified that he thought that the vehicle might turn off toward the monument where there is a side road for some primitive camping. *Id.* at 16:1-7.  Agent Seed and Agent Delgado further testified that the vehicle did not turn off toward the monument, nor did it turn in to any of the ranches.  Hr'g Tr. 5/19/2014 (Doc. 45) at 16:1-7; 49:6-11; 67:6-68:4; 102:14-22.  Agent Seed testified that because the vehicle appeared to be neither a camper or a rancher, and the lack of a full moon indicated that the occupants were not sightseers, and because the vehicle was heading toward Interstate 10, he believed further investigation was appropriate. *Id.* at 16:2-17:23.

Agent Seed and Agent Delgado testified that they decided to pull of the side of the road, turning their vehicle toward traffic. *Id.* at 17:21-18:4; 48:18-49:2; 51:22-25; 100:8-16; 100:25-101:15; 102:4-15; 102:23-103:6.  Agent Delgado testified that once they were pulled over, the vehicle had its high-beam lights on, which allowed him to see the vehicle occupants as they drove by. *Id.* at 103:7-25; 127:7-19; 133:22-134:8.  Agent Seed testified that he believed the takedown lights on the vehicle's overhead lights were on at this time. *Id.* at 32:9-22.  Agent Delgado testified that as the vehicle passed their location, he "clearly saw the driver grab the steering wheel with both hands, locked up, like elbows locked out,

gripping the steering wheel, and just looking straight forward." Hr'g Tr. 5/19/2014 (Doc. 45) at 104:1-5; 135:5-17.  Agent Delgado found this somewhat odd, because usually ranchers or tourists will either raise their hands to cover their eyes from the high beams or wave at the agents. *Id.* at 104:6-21.  Agent Delgado testified that although the windows were tinted and closed, he had a clear view of the passengers inside the vehicle. *Id.* at 115:24-116:16.

Agent Seed and Agent Delgado further testified that as the pickup truck passed their location, dirt bikes were visible in the back of the truck leaning up against its bed rails. *Id.* at 17:24-18:18; 105:22-106:12; 135:18-136:16.  Agent Seed also testified that he had not seen recreational dirt bikers in the area, and that dirt bikes are strictly prohibited in the area of the Chiricahua National Monument. *Id.* at 13:9-22; 18:13-24; 27:5-9; 78:5-7.  Agent Delgado corroborated Agent Seed, and testified that he had never seen dirt bike riders or ATV riders in the Chiricahuas. Hr'g Tr. 5/19/2014 (Doc. 45) at 94:3-5.  Agent Seed testified that the terrain in the area was primarily open grazing land, and the rancher roads have locked gates on them, making the area hostile to off-roading. *Id.* at 18:25-19:7.  Agent Delgado testified that in his ten (10) years of working for Border Patrol, he had not seen any dirt bikes ridden in the entire Willcox area of responsibility. *Id.* at 92:7-94:5; 105:3-106:12. Agent Delgado further testified that ranchers do use ATV type vehicles; however, none of them use dirt bikes. *Id.*  Agent Seed and Agent Delgado both testified that the manner in which the dirt bikes were placed in the back of the truck seemed out of the ordinary. *Id.* at 19:8-25; 104:22-105:2.

Agent Seed and Agent Delgado testified that once the pickup truck passed the agents' location, they pulled out and followed the truck to run its registration and see if it turned off to any of the other houses in the area. Hr'g Tr. 5/19/2014 (Doc. 45) at 20:2-13; 110:21-111:8.  Agent Seed and Agent Delgado testified that upon performing a registration check with dispatch, the truck came back with a registered owner out of Douglas, Arizona, was not stolen, and did not have a recent history of border crossings. *Id.* at 20:14-20; 24:6-13; 56:4-9; 110:21-111:8.  Agent Seed testified that they found the Douglas registration somewhat suspicious, because the pickup truck was approximately thirty (30) miles from Douglas, in

the middle of the night on a sparsely populated road. *Id.* at 24:14-25:9.  Agent Delgado also found that a vehicle with a registered owner in Douglas, Arizona was somewhat suspicious because the faster way to Interstate 10 would have been via Highway 191.[1] *Id.* at 111:2-13. Agent Delgado testified that the Douglas, Arizona registration, coupled with the time of day and poorly secured motorcycles, prompted the agents to want to investigate further. *Id.* at 111:21-112:2.  Agent Seed further testified that the truck was encountered during border patrol's shift change, which in his experience is a time when smuggling organizations try and take advantage of agents being en route back to the station or not out to their designated patrol area. Hr'g Tr. 5/19/2014 (Doc. 45) at 25:3-26:12.  Agent Delgado further testified that shift change time was a time for heightened awareness for border patrol agents. *Id.* 97:2-5. Agent Delgado explained that during this time, agents are heading back to the station, and take established roads to do so, rather than staying on rural roads that they are assigned to. *Id.* at 97:24-98:8.  Agent Delgado further testified, that individuals engaged in criminal activity will take this opportunity to use back roads, where there is less risk of detection. *Id.* As such, Agent Delgado was on high alert, based on the increased apprehensions that he had been encountering during shift change. *Id.* at 100:8-24; 128:16-130:4.

Agent Seed testified that while he and Agent Delgado were following the pickup he was able to observe the dirt bikes, and the manner in which they were slung against the side rails and the straps were "just kind of thrown around" the handlebars and the front fairing. Hr'g Tr. 5/19/2014 (Doc. 45) at 30:2-9.  Agent Seed testified that he found this suspicious. *Id.* at 30:2-9; 63:5-7; 75:4-76:21.  Agent Seed further testified that in his experience both professionally as a Border Patrol Agent, and personally as an individual who has ridden dirt

---

[1]Defense counsel suggested that it does not matter where in Cochise County an individual lives, it is expected that the registration would return to a Douglas location. Hr'g Tr. 5/19/2014 (Doc. 45) 113:9-114:4.  While the Court believes this is incorrect, the record is unclear and cannot support a finding either way.  Irrespective of whether defense counsel is correct or not, Agent Delgado and Agent Seed testified that the registered owner in Douglas, Arizona traveling northbound on Highway 186 in the middle of the night was worthy of further investigation.

bikes recreationally, leaning the dirt bikes against the side of the vehicle risks damage to both the vehicle and the bikes, and looping a strap around the tailpipe of each bike did not seem a conscientious way to secure them. *Id.* at 19:8-25; 75:4-76:21. This is in part because of the risk of damage to the vehicle and the bike, as well as the risk of fuel leaking from the bikes. *Id.* at 82:1-85:2. Agent Seed testified that the manner in which the dirt bikes were secured, as well as his knowledge that individuals use props, such as utility vehicles meant to look like construction crews or trying to appear that they are recreational all terrain vehicle ("ATV") riders heightened his suspicions that perhaps the vehicle was involved in criminal activity. *Id.* at 19:8-25; 26:13-27:1; 56:1-2; 75:4-76:21; 82:1-83:8. Agent Delgado corroborated Agent Seed's testimony, noting that the dirt bikes were strapped together, rather than securely to the bed of the vehicle, and noting the strap around the exhaust system. Hr'g Tr. 5/19/2014 (Doc. 45) at 108:6-110:4; 136:14-138:17; 139:20-140:16. Agent Delgado noted the fragile nature of the exhaust system making it a poor choice for securing the dirt bikes in the truck bed. *Id.* Agent Delgado further testified that in one apprehension, smugglers had cut a motorcycle in half and secured it to plywood in order to appear that they were in the area for recreational purposes, and hidden several illegal aliens under the plywood. *Id.* at 106:13-24. Agent Delgado also testified that in his experience criminals use props in an effort to blend into the area that they are in. *Id.* at 106:13-108:5. Agent Delgado testified that this knowledge further coupled with never seeing any dirt bike riders in the area, raised his suspicions as to the pickup truck's occupants. *Id.* at 106:25-108:5. Agent Delgado also testified that it was very cold out, which made the pickup truck's presence with dirt bikes suspicious; however, he was clear this was only a reason to ask and hear what the occupants had to say, in other words, investigate further. Hr'g Tr. 5/19/2014 (Doc. 45) at 110:5-20. Agent Seed further testified that there was a great deal of dust along the top rails and tailgate of the pickup truck, as well as on the bikes. *Id.* at 30:10-23. Agent Seed believed this suggested that they had been driving on outlying dirt roads located away from the checkpoints. *Id.* Agent Seed testified that based on all of these observations, he and Agent Delgado decided to stop the pickup truck. *Id.* at 30:24-31:2.

On cross-examination, Agent Seed confirmed that although his report stated that "[i]t was not normal practice to ride dirt bikes at this time of night[,]" there was no evidence that the bikes had been ridden that evening.  *Id.* at 38:1-23.  Agent Seed further testified that although the Rucker Canyon area is open to the public and has a primitive campground, in his experience there was no dirt bike riding or ATV recreation in that area.  *Id.* at 38:25-40:5; 76:22-77:19.  Agent Seed also testified that a dirt bike that had been used could be expected to have dirt on it.  Hr'g Tr. 5/19/2014 (Doc. 45) at 47:7-12.

## II.    ANALYSIS

Defendants contest the investigatory stop of their vehicle as unsupported by "reasonable suspicion that crime was afoot[.]"  Def. Sosa's Amended Mot. to Suppress Evid. and Request for Evid. Hr'g (Doc. 30) at 5; *see also* Hr'g Tr. 5/19/2014 (Doc. 45) 4:15-24.

"The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest."  *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002) (citing *Terry v. Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)).  For the police to conduct a valid stop, they must "have a reasonable suspicion supported by articulable facts that criminal activity may be afoot." *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (internal quotes and citation omitted).  "[T]he level of suspicion required for a *Terry* stop[, however,] is obviously less demanding than that for probable cause."  *Id.* at 8, 109 S.Ct. at 1585 (internal citations omitted).  "Officers on roving border patrols . . . may conduct 'brief investigatory stops' without violating the Fourth Amendment 'if the officer's action is supported by reasonable suspicion to believe that criminal activity may be afoot.'" *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013) (en banc) (citations omitted).

"Reasonable suspicion is defined as 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Id.* (quoting *United States v.*

1    *Cotterman*, 709 F.3d 952, 968 (9th Cir. 2013) (en banc)).   "The reasonable-suspicion

2    standard is not a particularly high threshold to reach." *Valdes-Vega*, 738 F.3d at 1078.

3    Furthermore, although "a mere hunch is insufficient to justify a stop, the likelihood of

4    criminal activity need not rise to the level required for probable cause, and it falls

5    considerably short of satisfying a preponderance of the evidence standard." *Id.* (quoting

6    *Arvizu*, 534 U.S. at 274, 122 S.Ct. 744) (citations and internal quotation marks omitted).

7         When making a reasonable-suspicion determination, the reviewing court "must look

8    at the 'totality of the circumstances' of each case to see whether the detaining officer has a

9    'particularized and objective basis' for suspecting legal wrongdoing." *United States v.*

10   *Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002) (citations omitted);

11   *see also United States. v. Alvarez*, 899 F.2d 833, 836 (9th Cir. 1990).  In so doing, officers

12   are allowed "to draw on their own experience and specialized training to make inferences

13   from and deductions about the cumulative information available to them that 'might well

14   elude an untrained person.'" *Id.* at 273, 122 S.Ct. at 750-51. (citations omitted); *see also*

15   *Valdes-Vega*, 738 F.3d at 1078.  Moreover, what may seem to be innocuous conduct when

16   viewed in isolation may be appropriately considered when considering the totality of the

17   circumstances; thus, it is inappropriate to view factors in isolation and to give no weight to

18   factors which may have an innocent explanation. *Arvizu*, 534 U.S. at 273-75,  122 S.Ct. at

19   750-51; *see also Cotterman*, 709 F.3d at 970 ("It is not our province to nitpick the factors in

20   isolation but instead to view them in the totality of the circumstances.").  Furthermore, "A

21   determination that reasonable suspicion exists . . . need not rule out the possibility of

22   innocent conduct." *Valdes-Vega*, 738 F.3d at 1078-79 (citing *Arvizu*, 534 at 277, 122 S.Ct.

23   744) (alterations in original).

24        "In the context of border patrol stops, the totality of the circumstances may include

25   characteristics of the area, proximity to the border, usual patterns of traffic and time of day,

26   previous alien or drug smuggling in the area, behavior of the driver, appearance or behavior

27   of passengers, and the model and appearance of the vehicle." *Valdes-Vega*, 738 F.3d at 1079

28   (citing *United States v. Bignoni-Ponce*, 422 U.S. 873, 884-85, 95 S.Ct. 2574, 45 L.Ed.2d 607

1    (1975)).  "Not all of these factors must be present or highly probative in every case to justify

2    reasonable suspicion[,] . . . [a]nd the facts must be filtered through the lens of the agents'

3    training and experience."  *Valdes-Vega*, 738 F.3d at 1079 (citations omitted).

4           The totality of the circumstances in this case, demonstrate that Border Patrol Agents

5    Seed and Delgado possessed reasonable suspicion to stop the Defendants.  As an initial

6    matter, the Court finds the testimony of Border Patrol Agents Seed and Delgado credible.

7    Both agents testified that they initially saw the pickup truck's headlights shortly after

8    midnight on January 19, 2014, traveling northbound on Highway 186 from a distance.  Hr'g

9    Tr. 5/19/2014 (Doc. 45) 14:14-19; 16:8-14; 17:13-15; 48:18-49:2; 49:18-50:1; 98:20-99:21.

10   Both agents found it odd to see a vehicle on the highway at that time of night, especially

11   since it was not uncommon that they would complete an eight (8) hour shift without seeing

12   any vehicles.  *Id.* 14:20-23; 15:3-14; 100:8-16; 101:16-102:3.  Furthermore, both agents were

13   aware that it was border patrol's shift change, and that increased criminal activity occurred

14   during this time. *Id.* at 25:3-26:12; 97:2-5; 97:24-98:8; 100:8-24; 128:16-130:4.  Both agents

15   were also aware that Highway 186 was used as a route to Interstate 10 by individuals who

16   wanted to avoid the checkpoint on Highway 191.  *Id.* at 78:13-15; 95:25-96:18; 97:2-21;

17   98:9-19; 142:4-18.  When the vehicle did not turn off toward the Chiricahua National

18   Monument, the agents concluded that its occupants were not campers and pulled off the road

19   to observe the vehicle further.  *Id.*  16:1-18:4; 48:18-49:2; 49:6-11; 51:22-25; 67:6-68:4;

20   100:8-16; 100:25-101:15; 102:14-22; 102:23-103:6.

21          Once the pickup truck passed the agents' location, Agent Delgado testified that as the

22   vehicle passed their location, and although the windows were tinted and closed, he had a

23   clear view of the passengers inside the vehicle, and he "clearly saw the driver grab the

24   steering wheel with both hands, locked up, like elbows locked out, gripping the steering

25   wheel, and just looking straight forward." Hr'g Tr. 5/19/2014 (Doc. 45) at 104:1-5; 115:24-

26   116:16; 135:5-17.  Agent Delgado found this somewhat odd, because usually ranchers or

27   tourists will either raise their hands to cover their eyes from the high beams or wave at the

28   agents.  *Id.* at 104:6-21.  Additionally, both agents saw dirt bikes visible in the back of the

truck leaning against its bed rails. *Id.* at 17:24-18:18; 105:22-106:12; 135:18-136:16. Neither agent had seen recreational dirt bikers in the Willcox area of responsibility before. *Id.* at 13:9-22; 18:13-24; 27:5-9; 78:5-7; 92:7-94:5; 94:3-5; 105:3-106:12. Agent Delgado further testified that ranchers do use ATV type vehicles; however, none of them use dirt bikes. *Id.* at 92:7-94:5; 105:3-106:12. Moreover, Agent Seed and Agent Delgado both testified that the manner in which the dirt bikes were placed in the back of the truck seemed out of the ordinary. Hr'g Tr. 5/19/2014 (Doc. 45) at 19:8-25; 104:22-105:2.

Accordingly, the agents pulled out behind the pickup truck and followed it, in order to run its registration and see if it turned off to any of the other houses in the area. *Id.* at 20:2-13; 110:21-111:8. Upon performing a registration check with dispatch, the truck came back registered out of Douglas, Arizona, was not stolen, and did not have a recent history of border crossings. *Id.* at 20:14-20; 24:6-13; 56:4-9; 110:21-111:8. The agents found the Douglas registration somewhat suspicious, because the pickup truck was approximately thirty (30) miles from Douglas, in the middle of the night on a sparsely populated road. *Id.* at 24:14-25:9; 111:2-13. Especially since the faster way to Interstate 10 would have been via Highway 191. *Id.* at 11:10-12:8; 22:12-14; 24:14-25:9; 94:6-95:7; 111:2-13. Additionally, the agents found that the manner in which the dirt bikes were in the back of the truck, leaning against the side rails, and strapped together, rather than secured to the bed of the pickup truck suspicious. Hr'g Tr. 5/19/2014 (Doc. 45) at 19:8-25; 30:2-9; 63:5-7; 75:4-76:21; 82:1-85:2; 108:6-110:4; 136:14-138:17; 139:20-140:16. The agents suspected that the dirt bikes may be props, being used by criminals to blend in to the area. *Id.* at 19:8-25; 30:2-9; 63:5-7; 75:4-76:21; 82:1-83:8; 106:13-108:5. Based upon all of these observations, the agents decided to stop the pickup truck. *See id.* at 30:24-31:2.

Defendants attempt to argue each piece of evidence independently is innocent, or applies to most of the population, and the stop is pretextual. *See id.* at 154:25-155:14; 159:14-19. What may seem to be innocuous conduct when viewed in isolation, however, may be appropriately considered when considering the totality of the circumstances; thus, it is inappropriate to view factors in isolation and to give no weight to factors which may

have an innocent explanation. *Arvizu*, 534 U.S. at 273-75, 122 S.Ct. at 750-51. Indeed, "even innocent, noncriminal acts can foster reasonable suspicion in the total context." *Valdes-Vega*, 738 F.3d at 1080. Based upon all the factors, and in their own experience, Agent Seed and Agent Delgado suspected Defendants were involved in some sort of criminal activity. The Court finds that the totality of the circumstances supports a finding that Agent Seed and Delgado had a reasonable suspicion that criminal activity was afoot.

## III.     CONCLUSION

Agent Seed and Agent Delgado, based upon the totality of the circumstances, possessed reasonable suspicion that criminal activity may be afoot. *See Sokolow*, 490 U.S. at 7, 109 S.Ct. at 1585. As such, the stop of the Defendants on Highway 186 did not violate the Fourth Amendment.

## IV.     RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Court GRANT Defendant Luis Carlos Saiz's Motion for Joinder Re: Motion to Suppress Evidence and Request for Evidentiary Hearing (Doc. 32) and DENY Defendant Francisco Jesus Sosa's Amended Motion to Suppress Evidence and Request for Evidentiary Hearing (Doc. 30).

Pursuant to 28 U.S.C. §636(b) and Rule 59(b)(2) of the Federal Rules of Criminal Procedure, any party may serve and file written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. No reply shall be filed unless leave is granted from the District Court. If objections are filed, the parties should use the following case number: **CR-14-295-TUC-CKJ**.

. . .

. . .

. . .

. . .

Failure to file timely objections to any factual or legal determination of the Magistrate Judge in accordance with Fed. R. Crim. P. 59 may result in waiver of the right of review.

DATED this 20th day of June, 2014.

_____
Bruce G. Macdonald
United States Magistrate Judge