IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | No. CR-14-00295-TUC-CKJ (BGM) |
| Plaintiff, | **ORDER** |
| v. | |
| Francisco Jesus Sosa,<br>Luis Carlos Saiz, | |
| Defendants. | |

Defendant Francisco Jesus Sosa filed an Amended Motion to Suppress Evidence obtained as a result of a stop of vehicle driven by Defendant on January 19, 2014; Defendant Luis Carlos Saiz joined the motion. (Docs. 30, 32.) On May 19, 2014, Magistrate Judge Bruce G. Macdonald held an evidentiary hearing on the Amended Motion to Suppress. (Doc. 41.) Magistrate Judge Macdonald issued a Report and Recommendation (R & R) on June 20, 2014, recommending that Defendants' Motion to Suppress Evidence be denied. (Doc. 52.) On July 7, 2014, Defendant Saiz filed Objections to the R & R, and on July 8, 2014, Defendant Sosa filed a Motion for Joinder Re: Objection to Magistrate's Report and Recommendation. (Docs. 54, 56.) On July 10, 2014, the Government filed a Response.[1] (Doc. 57.)

---

[1] Defendant Saiz also filed a Reply. (Doc. 58). The R & R specifically provides that no replies shall be filed unless granted leave from the district court. (Doc. 52 at 12). Defendant failed to seek the Court's permission to file the Reply, and it will be stricken from the record and not considered by the Court.

After consideration of the objections and de novo review of the record, the Court overrules the objections, adopts the R & R, and denies the Amended Motion to Suppress.

## I. STANDARD OF REVIEW

The Court reviews de novo the objected-to portions of the Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The Court reviews for clear error the un-objected to portions of the Report and Recommendation. *Johnson v. Zema Systems Corp.,* 170 F.3d 734, 739 (7th Cir. 1999); *see also Conley v. Crabtree,* 14 F.Supp.2d 1203, 1204 (D.Or. 1998).

## II. FACTUAL BACKGROUND

At the May 19, 2014 evidentiary hearing, Border Patrol Agents Edward Seed and Juan Delgado testified for the Government. Defendants did not present any witnesses. The record shows the following:

Agent Seed has been employed with the United States Border Patrol for the past six years. (Doc. 45 (May 19, 2014 Hrg. Trans.) at 7-8.) He has continually worked at the Wilcox Border Patrol Station during that time. (Doc. 45 at 8). Agent Delgado has been employed with the United States Border Patrol for the past ten years and has been stationed at the Wilcox Border Patrol Station his entire career. (Doc. 45 at 88). As part of their responsibilities, Agents Seed and Delgado regularly patrol the areas around Interstate 10 (I-10) from Douglas, Arizona to the New Mexico border including Highways 181/186 and Highway 191. (Doc. 45 at 8, 13, 89). Agents Seed and Delgado are very familiar with that area. (Doc. 45 at 9, 89, 91).

The area around Highway 186 is sparsely populated, and the Chiricahua National Monument is at one end. Agent Seed testified that there are 30 to 50 households along Highway 186 between the Chiricahua National Monument and Wilcox and about 15 households in the area the agents were patrolling the night of January 14, 2014. (Doc. 45 at 13, 14.) Agents Seed and Delgado are very familiar with the ranchers that reside in that area and the vehicles that they drive. (Doc. 45 at 9, 91.) Highway 186 intersects with I-10 and runs parallel to Highway 191. (Doc. 45 at 10.) The Chiricahua National

1  Monument is located at the intersection of Highway 181 and Highway 186. (Doc. 45 at
2  90.) Someone traveling from Douglas, Arizona north to I-10 can take Highway 181/186
3  or Highway 191. (Doc. 45 at 11, 94.) Highway 191 is the faster route, however, because
4  it has a higher speed limit and is a more direct route to I-10. (Doc. 45 at 10, 11, 94-95.)
5  There are Border Patrol checkpoints set up on Highway 191 and I-10 but none on
6  Highway 181/186. (Doc. 45 at 10, 12, 78.) As such, Highway 181/186 is a route
7  commonly used by alien or drug smugglers to avoid the Border Patrol checkpoints on
8  Highways 191 and I-10. (Doc. 45 at 96, 142.)
9        On January 19, 2014, Agents Seed and Delgado were working the night shift from
10  6 p.m. to 2 a.m. (Doc. 45 at 12, 96, 98.) Shortly after 12 a.m., they were seated in their
11  Border Patrol vehicle when they observed a vehicle traveling north on Highway 186
12  heading towards I-10. (Doc. 45 at 14, 17, 99-100.) This initially raised suspicions
13  because it was rare to observe a vehicle traveling on Highway 186 at night. Further, the
14  Defendants' vehicle was observed during a Border Patrol agent shift change and it is
15  common for alien or drug smugglers to attempt to travel through that area during a shift
16  change. (Doc. 45 at 14, 25-26, 98, 100, 130.)
17        Agents Seed and Delgado observed the vehicle travel past the Chiricahua National
18  Monument and continue traveling north on Highway 186. (Doc. 45 at 16-17, 102.)
19  Agent Seed reasoned that because the vehicle travelled past the camp grounds at the
20  Chiricahua National Monument, it was unlikely that the occupants of the vehicle were
21  campers or tourists. (Doc. 45 at 17). The Agents then pulled their vehicle over to the
22  side of the road and observed Defendants' vehicle as it drove past them. (Doc. 45 at
23  102.)
24        As the Defendants' vehicle passed, Agent Delgado observed the driver of the
25  vehicle grab the steering wheel with both hands in a rigid fashion and look straight ahead
26  as they passed. (Doc. 45 at 104.) In addition, the agents observed two dirt bikes strapped
27  down in the rear of the Defendants' pick-up truck. (Doc. 45 at 18, 105.) Agents Seed
28  and Delgado explained that it was unusual to observe dirt bikes in the vehicle because

1  there is no recreational off-roading in that area and neither agent had ever previously
2  observed anyone riding a dirt bike in that area. (Doc. 45 at 13, 19, 92-93.) Further, it
3  was very cold out that evening and not conducive to riding dirt bikes. (Doc. 45 at 52,
4  110.) Agents Seed and Delgado decided to investigate further and pulled out behind the
5  Defendants' vehicle to begin following it. (Doc. 45 at 20, 110-111.)

6        A registration check revealed that the vehicle was registered out of Douglas,
7  Arizona and the vehicle had no history of border crossings. (Doc. 45 at 20, 56, 111.)
8  The Agents observed that the dirt bikes were leaning against the side of the truck bed and
9  were not securely strapped. (Doc. 45 at 18-19, 30, 105-106.) One of the dirt bikes had a
10 strap wrapped around the exhaust pipe, which was extremely odd because the exhaust
11 pipe is a weak point on the dirt bike and if the truck hit a bump it could cause severe
12 damage to the bike. (Doc. 45 at 76, 84, 105-106, 109.) Agent Seed explained that dirt
13 bikes are normally secured upright. (Doc. 45 at 82.) Further, Agents Seed and Delgado
14 explained that they had observed smugglers attempt to use ATV's or dirt bikes as props
15 in an effort to blend into the area. (Doc. 45 at 26, 106-107.)

16       After following the Defendants' vehicle for approximately three minutes, the
17 agents pulled them over. (Doc. 45 at 30-31, 56.) There were no camp grounds or bike
18 trails to the north of the location where Defendants were stopped. (Doc. 45 at 27.)
19 While the Agents did not observe Defendants violate any traffic laws, (Doc. 45 at 129),
20 the stop was based on the Agents' observations of the vehicle given the location and time
21 of their observations.

22 **III.  TIMELINESS OF OBJECTIONS**

23       The government argues that Defendants' Objections are untimely and should not
24 be considered by the Court. Pursuant to Rule 59:

25 > Within 14 days after being served with a copy of the recommended disposition, or at some other time the court
26 > sets, a party may serve and file specific written objections to
27 > the proposed findings and recommendations….Failure to object in accordance with this rule waives a party's right to
28 > review.

- 4 -

Fed.R.Crim.P. 59(b)(2). Pursuant to Rule 45, in order to compute the time Defendants had to file objections, the Court must exclude the day that the R & R was issued and then count every day including weekends and holidays. *See* Fed.R.Crim.P. 45(a)(1)(A), (B). However, if the final day is a weekend or legal holiday, the period continues to run until the end of the next day that is not a holiday or weekend. *See* Fed.R.Crim.P. 45(a)(1)(C).

In this case, Magistrate Judge Macdonald issued the R & R on June 20, 2014. (Doc. 52.) Fourteen days from June 20, 2014 is July 4, 2014, which is a legal holiday. *See* Fed.R.Crim.P. 45(a)(6)(A). As such, the period for Defendants to file objections continued to the next date that is not a legal holiday or weekend. In this case, the next available date was July 7, 2014. However, since Rule 59 mandates that a party may serve and file written objections within 14 days after being served with a copy of the Report and Recommendation, the Court must add an additional 3 days after the period would otherwise expire. *See* Fed.R.Crim.P. 45(c).

Accordingly, the last date for Defendants to file written objections to Magistrate Judge Macdonald's R & R was July 10, 2014. Because Defendant Saiz's Objections were filed on July 7, 2014, they were timely, as was Defendant Sosa's Joinder filed on July 8, 2014. (Docs. 54, 56.)

**IV.   Discussion**

**A.   Objections and Response**

Defendants object to Magistrate Judge Macdonald's finding that the Border Patrol Agents had reasonable suspicion for the investigatory stop of the Defendants. They contend that the facts relied on boil down to the following:

> 1. The road ran parallel to the more traveled road that contained a Border Patrol checkpoint and could be used to avoid that checkpoint.
>
> 2. The road, if it was being used to make the entire trip from Douglas to Wilcox, would be longer and more difficult and require a lower speed, so a truck using that road was trying to avoid the Border Patrol.
>
> 3. The dirt bikes were suspicious because the area and time of day were inappropriate for the use of dirt bikes, and the dirt bikes were not fastened to the truck in the usual way.

- 5 -

(Doc. 54 at 3.) They argue that in *United States v. Garcia-Camacho*, the Ninth Circuit found insufficient grounds for reasonable suspicion and that the facts in *Garcia-Camacho* are similar to the facts in the present case. (*Id.* at 4-6, citing *Garcia-Camacho*, 53 F. 3d 244 (9th Cir. 1995).) Defendants also rely on *United States v. Rodriguez-Sanchez,* where the court found the following factors insufficient to support a finding of reasonable suspicion:

> (1) interstate 8 is a "notorious route for alien smugglers";
>
> (2) defendant did not acknowledge the agents as he passed their marked car;
>
> (3) defendant's car was of a kind agents thought could be used for alien smuggling;
>
> (4) although the agents saw only the defendant in the car, it appeared to be "heavily loaded" and "kind of floated" over bumps in the road;
>
> (5) defendant is a Hispanic male;
>
> (6) while being followed, defendant looked at the agents several times in his rear-view mirror and swerved slightly within his lane.

(Doc. 54 at 4, citing *Rodriguez-Sanchez,* 23 F.3d 1488, 1492 (9th Cir. 1994).) Defendants assert that the Magistrate Judge here relied in part on Defendants' demeanor; specifically the position of his arms, and that this was not permissible. (Doc. 54 at 5.)

Defendants contend that there must be "a particularized and objective basis for suspecting the particular person stopped of criminal activity" and that the objective basis must consist of "specific, articulable facts which, *together with objective and reasonable inferences*, form the basis for suspecting that the particular person detained is engaged in criminal activity." (Doc. 54 at 9, citing *U.S. v. Rodriguez*, 976 F. 2d 592 (9th Cir. 1992).) Defendants argue that the inferences drawn here were not reasonable. They maintain that the testimony regarding the dirt bikes shows that the agents never considered whether the bikes were being transferred from one location to another, which would be logical in view of their testimony that they had never seen dirt bikes in use in the area. Defendants also contend that it was illogical for the agents to believe that the bikes were props to

- 6 -

help Defendants "blend into their area" if bikes would not be ridden in the area. (*Id.* at 6.) Although the agents testified to the suspicion created by the way the bikes were strapped into the truck, there was no testimony that the bikes were loose and rattling. (*Id.* at 7.)

As to the truck, Defendants argue that the Magistrate Judge should not have credited suspicions about the registration of the truck in Douglas, 30 miles away, because the agents admitted that all vehicles in that part of Cochise County are registered in Douglas. (*Id.*) They further argue that although the agents testified that travel during midnight at shift change was suspicious because smuggling organizations try to take advantage of that, the agents' shift ended at 2:00 a.m., not midnight. (*Id.* at 8.)

Regarding the road taken, Defendants complain that although the agents determined that Defendants did not visit one of the 15 households in the area or the Chiricahua National Monument, they failed to follow Defendants to determine if they were visiting someone in other communities in the area even though there was nothing requiring an immediate stop. (*Id.* at 9.)

The Government argues that the only fact that was relied on by the agents in both *Garcia-Camacho* and the case at hand is that Defendants looked straight ahead and did not acknowledge the agents. (Doc. 57 at 7.) They assert that assuming that factor is irrelevant in the Ninth Circuit, even without it, the agents still had reasonable suspicion based on the time of night, the extremely rural area, and the appearance of the vehicle. (*Id.*) The Government also emphasizes that the events in *Garcia-Camacho* occurred 300 miles from the border, while the stop in this case was less than 70 miles from the border. (*Id.* at 6.)

The Government further contends that even if the facts of the two cases were similar, the law has changed significantly since the holding in *Garcia-Camacho*, which was based on scrutinizing each factor in isolation, as well as the categorical exclusion of certain factors. (*Id.*) Specifically, the Supreme Court held in *United States v. Arvizu* that the approach adopted by the Ninth Circuit of analyzing and rejecting individual factors

was precluded by *Terry v. Ohio*. (*Id.*, citing *Arvizu*, 534 U.S. 266, 271, 274 (2002), citing *Terry v. Ohio*, 392 U.S. 1, 9 (1968).)

**B.     Analysis**

"The [Supreme] Court has recognized that a law enforcement officer's reasonable suspicion that a person may be involved in criminal activity permits the officer to stop the person for a brief time and take additional steps to investigate further." *Hiibel v. Nevada*, 542 U.S. 177, 185 (2004).

In order to effectuate a lawful stop, the officer must have "a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *United States v. Sokolow*, 490 U.S. 1, 204 7 (1989) (citing *Terry*, 392 U.S. at 30); *see also United States v. Tiong*, 224 F.3d 1136, 1140 (9th Cir. 2000) ("The quantum of proof needed for reasonable suspicion is less than a preponderance of evidence, and less than probable cause.") (citation omitted).

In deciding whether reasonable suspicion existed for a stop, the totality of circumstances must be considered. *See Arvizu*, 534 U.S. at 274-74; *United States v. Valdez-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013)(en banc);*United States v. Osborn,* 203 F.3d 1176, 1181 (9th Cir. 2000) (quoting *United States v. Cortez,* 449 U.S. 411, 417 (1981)). Notably, *Arvizu* reversed the Ninth Circuit's ruling that had evaluated and rejected seven factors in isolation from each other; the Supreme Court reasoned that the approach did not take into account the "totality of the circumstances" and noted that the Court of Appeals "appeared to believe that each observation by [the officer] that was by itself readily susceptible to an innocent explanation was entitled to 'no weight.'" 534 U.S. at 274. Courts have held that "[a]ll relevant factors must be considered in the reasonable suspicion calculus—even those factors that, in a different context, might be entirely innocuous." *United States v. Fernandez-Castillo*, 324 F.3d 1114, 1117 (9th Cir. 2006) (citing *Arvizu*, 534 U.S. at 277–78). In other words, a determination of reasonable suspicion does not require ruling out the possibility of innocent conduct. *Valdez-Vega*, 738 F.3d at 1078-79. In addition, the totality of the circumstances test precludes a court

from holding that certain factors are presumptively given no weight. *Id.* at 1079.

"Reasonable suspicion . . . can arise from information different in quality and content and even less reliable than that required for the establishment of probable cause." *United States v. Mattarolo,* 209 F.3d 1153, 1157 (9th Cir. 2000) (citing *Alabama v. White*, 496 U.S. 325, 330 (1990)). "The officer's training and experience are factors to consider in determining if the officer's suspicions were reasonable." *Mattarolo,* 209 F.3d at 1157 (citing *United States v. Michael R.*, 90 F.3d 340, 346 (9th Cir. 1996)). "[S]pecific, articulable acts which, together with objective and reasonable inferences, form a basis for suspecting that the particular person . . . is engaged in criminal activity" are required. *United States v. Hernandez-Alvarado*, 891 F.2d 1414, 1416 (9th Cir. 1989) (citation omitted).

"In the context of Border Patrol [stops], the factors to be considered in determining whether 'reasonable suspicion' exists to justify stopping a vehicle include, but are not limited to" (1) characteristics of the area; (2) proximity to the border; (3) usual patterns of traffic and time of day; (4) prior alien or drug smuggling in the area; (5) behavior of the driver, including obvious attempts to evade officers; (6) appearance or behavior of passengers; and (7) the model and appearance of the vehicle. *Valdez-Vega*, 738 F.3d at 1079; *United States v. Garcia-Barron*, 116 F.3d 1305, 1307 (9th Cir. 1997) (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 885 (1975)). Not all factors must be present or highly probative to justify reasonable suspicion, and facts must be "filtered through the lens of the agents' training and experience." *Valdez-Vega*, 738 F.3d at 1079.

In this case, the record establishes the agents' experience as border patrol officers, their knowledge of the area, and numerous observations made by the agents supporting an investigatory stop of Defendants' vehicle. *See id*. Agent Seed has six years of experience working in the Wilcox Border Patrol station, and Agent Delgado has ten years of experience. They were very familiar with the area, knew that it was sparsely populated, that the only tourist attraction was the Chiricahua National Monument, and

1   that the population otherwise consisted of local ranchers. Both agents testified that they
2   knew most of the ranchers and their vehicles and that vehicle traffic on highway 186 is
3   mostly during daylight hours.  The agents knew that there were approximately 15
4   households in the area they were patrolling on the relevant night.  They testified that there
5   was no border checkpoint on Highway 186 and that another route was faster but that it
6   had a border checkpoint.  They further testified that in their experience, smuggling
7   organizations would take advantage of agents being en route back to the station during
8   the border patrol's shift change, which is when they observed Defendants' truck, and
9   further, that smugglers sometimes used props.

10   It is undisputed that the agents observed Defendants' vehicle traveling north on
11  Highway 186 after midnight, close in time to a shift change; that Highway 186 is a
12  commonly used roadway by alien and drug smugglers to avoid the Border Patrol
13  Checkpoints on Highway 191 and I-10; that it is an inconvenient route since it takes
14  longer to reach I-10 than the more commonly used Highway 191; and that the area is near
15  the border.  Defendants' vehicle drove past the Chiricahua National Monument and
16  continued heading north towards I-10.  As the vehicle passed the Agents, they observed
17  two dirt bikes in the rear of the vehicle, lying on the side and not securely strapped.  The
18  Agents had previously witnessed smugglers attempt to use props such as dirt bikes or
19  ATV's in an attempt to blend into the area.  However, observing dirt bikes in this area
20  was very unusual since there were no available dirt bike trails in the near vicinity and the
21  area was not conducive to off-roading.

22   In *Arvizu*, the Supreme Court found an officer reasonably inferred illegal activity
23  from his observations and experience as a border patrol agent; the Supreme Court found
24  reasonable suspicion based on the defendant using a little-traveled route favored by
25  smugglers to avoid the Highway 191 checkpoint, a "commonsense inference that [the
26  defendant] intended to pass through the area at a time when officers would be leaving
27  their backroads patrols to change shifts," the lack of likelihood that the defendant and his
28  family were on a picnic outing because the vehicle had not entered a known recreational

1 area, and the defendant's stiff and rigid posture and his children mechanical-like waving.
2 *Arvizu*, 534 U.S. at 277.
3     Several of the *Arvizu* factors are found in the present case. In addition, the agents
4 here observed dirt bikes, which were unusual for the area and not securely fastened into
5 the vehicle. While individually, any one of the factors may not amount to reasonable
6 suspicion for a stop, in deciding whether the totality of circumstances constitute a
7 reasonable suspicion, it is inappropriate to view each factor in isolation and to give no
8 weight to factors for which an innocent explanation may exist. *See id*. at 274; *Valdez-*
9 *Vega*, 738 F.3d at 1079. After a *de novo* review of the evidence and viewing the facts
10 through the lens of the agents' experience, the Court overrules Defendants' objections
11 and finds there was reasonable suspicion for the stop. Accordingly,

**IT IS ORDERED**:

(1)     The Report and Recommendation (Doc. 52) is ADOPTED.

(2)     Defendants' Motion to Suppress (Docs. 30, 32) is DENIED.

(3)     Defendant's Reply to Response (Doc. 58) is STRICKEN.

Dated this 4th day of September, 2014.

_____
Cindy K. Jorgenson
United States District Judge